# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VICKY M. and DARIN M., as Parents and
Natural Guardians of a Minor, A.J.M., et
al.,

        Plaintiffs,

        v.

NORTHEASTERN EDUCATIONAL
INTERMEDIATE UNIT, et al.,

        Defendants.

NO. 3:06-CV-01898

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court are four motions for summary judgment: a motion for summary judgment on all relevant counts by Defendant Susan Wzorek (Doc. 123); a motion for partial summary judgment collectively by Plaintiffs on Count II and Count XI (Doc. 127); a motion for summary judgment on all relevant counts by Defendants Northeastern Education Intermediate Unit, Fred Rosetti, and Clarance Lamanna (Doc. 130); and a motion for summary judgment on all relevant counts by Defendants Abington Heights School District, David Arnold, William McNulty, and Mariellen Sluko (Doc. 133). For the reasons stated below, the motions for summary judgment will be granted in part and denied in part, as described in the attached order.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction"). This is a removal action for which federal jurisdiction is predicated upon the counts of Plaintiffs' Complaint that allege violations of the United States Constitution and federal law including the Individuals with Disabilities Education Act,

codified at 20 U.S.C. § 1400, *et seq.* The Court exercises supplemental jurisdiction over Plaintiffs' state-law tort claims pursuant to 28 U.S.C. § 1367.

## BACKGROUND

### I.     Factual Background

Northeastern Educational Intermediate Unit ("NEIU") is an educational resource agency that acts as a liaison between the Pennsylvania Department of Education and a number of school districts and also provides education services. (Doc. 130, Ex. 2, ¶ 1). Dr. Fred Rosetti ("Rosetti") was the Executive Director of NEIU during the relevant times to this litigation. (*Id.* ¶ 7.) Dr. Clarence Lamanna ("Lamanna") was the Director of Special Education at NEIU at all relevant times. (*Id.* ¶ 9.) Collectively, NEIU, Rosetti, and Lamanna are the NEIU Defendants. Susan Wzorek ("Wzorek") was a teacher employed by NEIU during all relevant times. (*Id.* ¶ 1.) Jill Celli ("Celli") and Robin Medeiros ("Medeiros") were teacher's aides employed by NEIU during all relevant times. (*Id.* ¶ 16.)

The Abington Heights School District ("AHSD") is a  school district duly organized and existing under the laws of the Commonwealth of Pennsylvania. (Doc. 134, ¶ 1.) David Arnold, Ed.D. ("Arnold") was the Superintendent of AHSD from July 1, 2002 until June 30, 2004. (*Id.* ¶ 4.) William McNulty ("McNulty") was the Director of Special Education for AHSD from 2001 until 2005. (*Id.* ¶ 9.) Mariellen Sluko ("Sluko") was the Principal of Clarks Summit Elementary School during the 2002-2003 school year. (*Id.* ¶ 7.) Collectively, AHSD, Arnold, McNulty, and Sluko are the AHSD Defendants.

2

During the 2001-2002 and 2002-2003 school years Wzorek was a teacher in an autistic support class at Clarks Summit Elementary School. (Doc. 125, ¶ 1.) AHSD contracted with NEIU to provide services during the same time frame, including the placement of students in Wzorek's classroom. (*Id*. ¶ 20.) Plaintiffs are the parents of students allegedly abused in Wzorek's classroom during the 2001-2002 and 2002-2003 school years. (Doc. 91.)

There is at least some evidence on the record to support the following facts:

Wzorek was certified to teach special education for students K-12. (Doc. 155, pg. 101.) This qualified her to teach all special education students except those with visual, hearing, or speech impediment disabilities. (*Id*. at 151.) Wzorek asserts that while some training with regard to disciplining autistic children was offered, she failed to complete any courses. (Doc. 157, pg. 146.) While Wzorek did show up for one class, the instructor failed to arrive and Wzorek never returned. (*Id*.) She also took a course on classroom setup (*Id*. at 147) and a course on language programs for autistic students. (*Id*. at 148.) Wzorek failed to complete the entire twelve (12) hour safe crisis management program offered. (Doc. 155, pg. 80.)

During the school years NEIU supervisors Nasser (Doc. 157, pg. 137) and Weir (Doc. 176) would visit the classroom. Teacher evaluations were performed for Wzorek during both school years. (Doc. 155, pgs. 10-17.) The evaluations took into account feedback from only Wzorek and Lamanna, with Lamanna having never been in the classroom. (Doc. 158, pg. 95.); (Doc. 176). Visits to the classroom by supervisors were described to range between "quite [frequent]" (Doc. 157, pg. 14-23), to maybe once a month (Doc. 159, pg. 59.) The door to the public school, Clarks Summit Elementary, was

3

described as open at times, closed at others.  (Doc. 158, pg. 99.)

Wzorek's classroom was described as "chaos" through the first month, where there were children with severe behavioral problems, ages five (5) to eleven (11), all in one classroom.  (Doc. 156, pg. 20.)  Wzorek was also described as "really aggressive" during the second year (2002-2003), particularly after Christmastime.  (*Id.* at 21-25.)  The allegations of abuse include: the use of bungee cords for restraint and discipline (*Id.* at 16); the use of duct tape on students as restraints (Doc. 159, pg. 48); leaving students restrained in a chair and on the floor for several minutes after the students had overturned the chair (Doc. 156, pg. 21); using Rifton chairs for punishment or restraint (Doc. 159, pg. 51); grabbing students by the ear or pinching noses causing bruising (Doc. 156, pg. 23); grabbing students by the back of the neck (*Id.* at 26); dragging students by the hair and arms (*Id.* at 119); backhanding a student causing a bloody lip (*Id.* at 27); screaming into the faces of students (Doc. 158, pg. 60, 63); squeezing students' hands as a punishment (Doc. 156, pg. 54); crushing a student's fingers (Doc. 159, pg. 105); stepping on students' insteps for intimidation (Doc. 159, pg. 91); squeezing students' faces (Doc. 156, pg. 57); striking a student in the head with a tissue box (Doc. 158, pg. 62); depriving a non-verbal student of a picture communication system, preventing him from being able to communicate needs such as the bathroom (Doc. 159, pg. 76); forcing a student to ride home for over an hour on the bus soaked in urine (Doc. 172); and withholding food from a student as a punishment (Doc.159, pg. 104.)

All parties agree the trigger for the removal of Wzorek from the classroom came after Celli and Medeiros reported the alleged abuse to Lamanna on July 28, 2003.  (Doc. 130, Ex. 2, ¶ 21.)  There is some evidence that there were several prior warnings

4

provided to NEIU, Rosetti, and Lamanna about abuse in Wzorek's classroom. (Doc. 171) (Thomas R. attempted to contact NEIU "long before" the aides complained); (Doc. 157, pg. 99) (injury after student backhanded reported); (Doc. 173) (Rosetti contacted by Eva L. during 2001-2002 school year after observing a student being forced into a Rifton chair); (Doc. 172) (contacted after a student was forced to ride home for over an hour in urine soaked clothing); (Doc. 174) (Rosetti contacted by Gloria G. after being told her child could not take a medication during the week).

NEIU had policies detailing requirements for reporting student abuse, but none specifically for the abuse of disabled students. (Doc. 155, pg. 98.) Instead, they expected anything unusual to be reported by the NEIU employees or the non-NEIU personnel in the classrooms. (*Id*.) Celli and Medeiros stated that they waited so long to report the conduct because they were told that no one would believe them over a teacher. (Doc. 159, pg. 108.) Allegedly, there was a "code of silence" which discouraged reports against teachers. (Doc. 177, Ex. 2.) Medeiros had previously reported another teacher, but "nothing was ever done." (Doc. 158, pg. 57.) Wzorek also told Celli and Medeiros that no one would believe them. (Doc. 159, pgs. 73-74.) NEIU teachers allegedly congratulated a teacher "on keeping her mouth shut" when giving a deposition about these allegations. (Doc. 158, pg. 73.) Detective Kolcharno, an officer investigating Wzorek for criminal charges stemming from the abuse commented:

> [W]e've done internal affairs investigations for police departments, and people talk about the blue wall, that cops don't testify against each other. I have never - never done an investigation where people covered for each other and people didn't want to get involved like this case. It was just unbelievable. I thought cops were bad, before I investigated a teacher.

5

(Doc. 170, pg. 44.)  Before meeting with Celli and Medeiros to discuss the allegations, Rosetti allegedly stated " don't worry about it, Sue (Wzorek), they're coming in here today to shoot their loads and then it's going to be over so don't worry about it."  (Doc. 177, Ex. 1.)    NEIU conducted an internal investigation, but may have missed interviewing several important witnesses.  (Doc. 163, pgs. 130-31.)  NEIU never reported the abuse allegations to the authorities.  (Doc. 163, pg. 27.)

The officials of AHSD were never informed by Celli or Medeiros of the allegations, and only heard about them after the July 28, 2003 report to Lamanna.  (Doc. 165, pg. 22.)  After reporting the allegations, AHSD teachers refused to allow Celli or Medeiros into their classrooms.  (Doc. 164, pg. 122.)  Because the behavior of the AHSD teachers towards the aides became disruptive, AHSD requested that the special education class be moved entirely out of Clarks Summit Elementary.  (*Id.* at 130.)

## II.    Procedural Background

On September 26, 2006, Defendants filed a notice of removal from the Court of Common Pleas of Lackawanna County, Pennsylvania to this Court, based on Plaintiffs' inclusion of federal causes of action in their Complaint.  (Doc. 1.)  For the purposes of discovery and pre-trial matters, the action of all parents and minor-plaintiffs were consolidated on June 6, 2008.  (Doc. 100.) Plaintiffs' moved to amend their Complaint on December 14, 2007, and after Court approval filed their Second Amended Complaint on February 1, 2008.  (Doc. 79); (Doc. 91.)  All parties filed their respective motions for summary judgment or partial summary judgment on April 15, 2009.  (Doc. 123) (Defendant Wzorek); (Doc. 127) (Plaintiffs); (Doc. 130) (NEIU defendants); (Doc. 133) (AHSD defendants.)  These motions have been fully briefed and argued orally; they are

6

now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved

against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Plaintiffs' Amended Complaint contains eleven (11) counts. Count I alleges violations of the Fourteenth Amendment, including violations of the Due Process Clause and the Equal Protection Clause. Count II alleges direct violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"). Count III alleges assault and battery against Defendant Wzorek. Count IV alleges intentional infliction of emotional distress against Defendant Wzorek. Count V alleges Defendant Wzorek breached her fiduciary duty to the Minor-Plaintiffs. In Count VI, Plaintiffs request punitive damages from Defendant Wzorek. Count VII contains a second claim of intentional infliction of emotional distress, this time against Defendants Lamanna, Rosetti, Sluko, McNulty, and

Arnold. Count VIII contains a second claim of breach of fiduciary duty, here against Defendants Lamanna, Rosetti,Sluko, McNulty, and Arnold. Count IX includes a negligence claim against Defendants Lamanna, Rosetti, Sluko, McNulty, and Arnold. Count X includes a punitive damages claim against Defendants Lamanna, Rosetti, Sluko, McNulty, and Arnold. Count XI contains an allegation regarding a violation of Section 504 of the Rehabilitation Act against Defendants NEIU and AHSD.[1] Each of the separate motions for summary judgment will be discussed collectively per count.

## I. Count I - Substantive Due Process and Equal Protection Claims

Plaintiffs' claims at Count I allege violations of substantive due process and equal protection against all defendants. Each of the Defendants' motions ask for summary judgment against these claims.

### A. Substantive due process

Plaintiffs' substantive due process claims are based upon the allegations that the Defendants failed to respect the Minor-Plaintiffs substantive due process right to bodily integrity.[2] The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Gottlieb v. Laurel Highlands Sch. Dst.*, 272 F.3d 168, 172 (3d

---

[1] Count XI also purports to contain a section 504 claim against Wzorek individually, but because such a claim would be invalid, this court denied leave to add this to the amended complaint in its February 1, 2008 Order. (Doc. 90.)

[2] Plaintiffs' Amended Complaint (Doc. 91) does not limit the due process claims to just this issue, but this Court's prior order (Doc. 90) dismissed claims of procedural due process and substantive due process based upon a failure to provide a "free and appropriate education." When granting leave to amend, this Court specifically denied the ability to resurrect any previously dismissed claim. (Doc. 90.)

Cir. 2001) (quotations omitted). Only state conduct that is "arbitrary, or conscience shocking, in a constitutional sense" rises to this level. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). "[T]he constitutional concept of conscience-shocking duplicates no traditional category of common-law fault . . . ." *Id.* at 848. The pertinent inquiry is "'whether the force applied caused injuries so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Jones v. Witinski*, 931 F.Supp. 364 (M.D. Pa. 1996) (quoting *Web v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).

### 1. Defendant Wzorek

Wzorek asserts qualified immunity against the Plaintiffs' claims. An official is entitled to qualified immunity if a reasonable official in their position at all relevant times could have believed, in light of clearly established law, that their conduct comported with established legal standards. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). A defendant bears the burden of establishing that he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001). In answering the question of whether a particular defendant is entitled to qualified immunity, the court must first determine whether a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court must then resolve the issue of whether the constitutional right was clearly established at the time of the alleged violation. *Id.*

The first question is whether the conduct alleged by the plaintiffs violates the substantive due process rights of the Plaintiffs because the conduct "shocks the

conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). In the context of determining whether force used by school personnel towards a student "shocks the conscience," the Third Circuit Court of Appeals has looked to the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172-73 (3d Cir. 2001). This standard has previously been applied to determine whether the discipline of an autistic student in a special education environment stated a substantive due process claim. *Koehler v. Juniata County Sch. Dist.*, No. 07-117, 2008 U.S. Dist. LEXIS 32079 (M.D. Pa. Apr. 17, 2008).

While a single slap to the face, *see Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 725-26 (6th Cir. 1996), or a punch to the chest of a student, *see Kurilla v. Callahan*, 68 F. Supp. 2d. 566, 564 (M.D. Pa. 1999), would be insufficient to "shock the conscience," here there are genuine issues of material fact of conduct significantly more egregious. Examples of the alleged conduct include: the use of bungee cords to restrain students (Doc. 156, pg. 3-11); leaving students restrained in a chair and on the floor for several minutes after the students had overturned the chair (*Id.* at 21); the use of Rifton chairs for punishment or restraint (Doc. 159, pg. 51); grabbing students by the back of the neck (Doc. 156, pg. 23); striking a student twice with the back of the hand (Doc. 158, pg. 22); stepping on students' feet for intimidation (Doc. 159, pg. 57); striking a student in the head with a tissue box (Doc. 158, pg. 62); depravation of a communication device for a

non-verbal student (Doc. 159, pg. 76); and withholding of food as a punishment (*Id.* at 104). If believed, the evidence of continuous abuse over a two year period could reasonably satisfy the standard of "shocking the conscience."

Assuming that a constitutional violation is supported by evidence, the second step in the qualified immunity inquiry is to determine whether the violated right was clearly established at the time of the conduct. There can be no question that at the time of the conduct there was a clearly established substantive due process right to bodily integrity, which includes the right to be free from abuse. *Ingraham v. Wright*, 430 U.S. 651, 673 (students have a right to be free from corporal punishment); *Romeo v. Youngberg*, 644 F.2d 147 (3d Cir. 1980) (en banc) (right of mentally retarded to freedom from assault in state institution), *vacated on other grounds*, 457 U.S. 307, 315 (1982). Wzorek asserts that subjectively there was no intent to abuse, but this argument is misplaced. The relevant inquiry is objectively whether a reasonable actor would have known of the right which was violated. *See Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). Because the right was clearly established, the claim for qualified immunity fails.

There are material questions of fact which, if true, demonstrate conduct which could reasonably be said to "shock the conscience." Because there is no question that bodily integrity was an establish due process right, Wzorek has not met the requirements for qualified immunity, and Defendant Wzorek's motion for summary judgment on this issue will be denied.

2.     NEIU Defendants

The individual NEIU defendants are entitled to qualified immunity if a reasonable official in their position could have believed, in light of clearly established law, that their

conduct comported with established legal standards. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). As previously stated, there can be no question that at the time of the conduct it was a clearly established right for the students to be free from physical abuse. *Ingraham v. Wright*, 430 U.S. 651, 673 (students have a right to be free from corporal punishment); *Romeo v. Youngberg*, 644 F.2d 147 (3d Cir. 1980) (en banc) (right of mentally retarded to freedom from assault in state institution), *vacated on other grounds*, 457 U.S. 307, 315 (1982). The issue of qualified immunity therefore turns on whether the actions of the NEIU defendants were "shocking to the conscience."

In *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir. 1989), a principal, an assistant principal, and a superintendent of the Bradford Area School District asserted qualified immunity for their supervision of a teacher who had sexually abused a student. *Stoneking*, 882 F.2d at 722. Plaintiff Stoneking argued not that the school officials encouraged the abuse, but that because of the officials' deliberate or reckless indifference to prior warnings she was harmed. *Id.* at 725. Evidence suggested that previous reports of sexual abuse by other students against the teacher were discouraged by the principals. *Id.* at 727 (warning it would be the students' word against the teacher's, and that the students should not inform their parents). The only action taken by the principals after hearing such allegations was to remove the reporting student from the teacher's class; they never reprimanded the teacher. *Id.* at 728. The *Stoneking* court, also applying the standard of summary judgment, found that if the testimony was believed, the acts to discourage and minimize reports of sexual misconduct encouraged a climate "where innocent girls were victimized." *Id.* at 730 (quotations omitted). The

court found sufficient evidence to allow the case to proceed to the jury against the principal and assistant principal. *Stoneking*, 882 F.2d at 731. Against the superintendent there was no evidence of notice of the prior reports. *Id.* Without any affirmative acts by the superintendent, such as ignoring or discouraging reports, the court held that summary judgment should have been granted. *Id.*

In the present case, the Plaintiffs have provided sufficient evidence to support a claim of deliberate or reckless indifference by the NEIU defendants. There is evidence that there were several warnings provided to Rosetti and Lamanna about abuse in Wzorek's classroom. (Doc. 171) (Thomas R. attempted to contact NEIU "long before" aides complained); (Doc. 157, pg. 99) (injury after student backhanded reported); (Doc. 173) (Rosetti contacted by Eva L. during 2001-2002 school year after observing student forced into Rifton chair); (Doc. 172) (contacted after student forced to ride home over an hour in urine soaked clothing); (Doc. 174) (Rosetti contacted by Gloria G. after she was told her child could not take a medication during the week). As a weighing of credibility is inappropriate at this juncture, this evidence is sufficient to create a genuine issue of material fact.

Furthermore, similar to the situation in *Stoneking* there is evidence suggesting a culture of ignoring and discouraging abuse allegations, creating an environment for continued abuse. *Stoneking*, 882 F.2d at 730 (encouraging a climate "where innocent girls were victimized"). Both aides stated that they were afraid to come forward and were told by NEIU employees that "no one would believe them over a teacher." (Doc. 159, pg. 73-74) (Celli); (Doc. 158, pg. 1, 23-25) (Medeiros). There is also evidence that NEIU officials did not treat the allegations seriously, such as when Medeiros overheard Rosetti

14

state "don't worry about it, Sue (Wzorek), they're (the aides) coming in here today to shoot their loads and then it's going to be over so don't worry about it." (Doc. 177, exhibit 1); *see also* (Doc. 163, pg. 103-31) (NEIU investigation missed important witnesses). A jury could reasonable find that the culture of encouraging silence and the failure to react to the warnings of the parents, particularly in light of the vulnerability of these students, "shocks to the conscience." This type of violation defeats the asserted qualified immunity and provides a basis for liability for Lamanna and Rosetti under Section 1983.

"[A] municipality will be liable for the constitutional violations of a state actor if it acts "with deliberate indifference to the consequences [and] established and maintained a policy, practice, or custom which directly caused constitutional harm." *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 176 (3d Cir. 2001) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)); *see also Mills v. City of Harrisburg*, 589 F. Supp. 2d 544 (M.D. Pa. 2008). A special relationship need not exist between the municipal officials and the individuals harmed for the policies or customs chosen or recklessly maintained. *Stoneking v. Bradford*, 882 F.2d at 725. There is sufficient evidence to suggest that NEIU was deliberately indifferent to the abuse because of the custom of hiding abuse allegations, or the "code of silence" in effect, which was put into place by the highest officials of the NEIU. (Doc. 177, exhibit 2) (discussion of "code of silence" like for policemen); (Doc. 159, pg. 108) (never going to get anywhere against a teacher); (Doc. 158, pg. 73) (congratulating teacher "on keeping her mouth shut" when giving a deposition); (Doc. 163, pg. 27) (NEIU never reports abuse to authorities); (*Id.* at 130-31) (NEIU internal investigation may have failed to speak with several important

15

witnesses).[3]  There is a question of material fact as to a custom in place at NEIU.

In the light most favorable to the non-moving party, the Plaintiffs, there are genuine issues of material fact with respect to the substantive due process claims.  The motion for summary judgment by the NEIU defendants will be denied.

3.      AHSD Defendants

The same standard which applies to the NEIU defendants also applies to the AHSD defendants.  Unlike the NEIU defendants, however, there is no evidence of direct warnings to AHSD officials about the abuse until after July 28, 2003, when Wzorek was removed.  (Doc. 158, pg. 90-91) (Medeiros never informed AHSD); (Doc. 159, pg. 155) (neither did Celli).  While AHSD teachers may also have been part of the "code of silence" (Doc. 164, pg. 122), the conduct of Arnold, McNulty, and Sluko is more similar to the "mere inaction and insensitivity" of the superintendent in *Stoneking*, rather that the deliberate or reckless indifference of the principals.  *See Stoneking*, 882 F.2d at 731.  Therefore, summary judgment is appropriate with respect to the AHSD individual defendants on the issue of substantive due process.

Similarly, there is a lack of evidence demonstrating the "code of silence" was a custom encouraged by the highest AHSD policy makers, namely the school board of AHSD.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (requiring edicts or

_____

[3] Detective Kolcharno, investigating the allegations of abuse for criminal proceedings against Wzorek stated "we've done internal affairs investigations for police departments, and people talk about the blue wall, that cops don't testify against each other.  I have never - never done an investigation where people covered for each other and people didn't want to get involved like this case.  It was just unbelievable.  I thought cops were bad, before I investigated a teacher." (Doc. 170, pg. 44).

acts representing official policy from the highest levels to create liability). Even in the light most favorable to the Plaintiffs, there are no allegations of material fact which support the substantive due process claim against AHSD or the AHSD individual Defendants.

At this stage, in the light most favorable to the non-moving party, the Plaintiffs, there are genuine questions of material fact as to the conduct of Defendants Wzorek and NEIU which might "shock the conscience;" therefore their motions to for summary judgment will be denied. There are insufficient questions of material fact against the AHSD Defendants to establish liability, therefore their motion for summary judgment will be granted.

B.     Equal Protection

The Equal Protection Clause requires that the law treat similarly situated people alike. U.S. Const. amend. XIV, § 1; *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). A disability, such as autism, is "not 'a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation.'" *Cleburne*, 473 U.S. at 442. Therefore, Plaintiffs need to demonstrate that a state actor had an intent to disadvantage all members of a class that includes the Minor-Plaintiffs. *See generally Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). A party making an equal protection claim "must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Handley v. Phillips*, 715 F. Supp. 657, 673 (M.D. Pa. 1989) (quoting *Huebschen v. Department of Health & Social Serv.*, 716 F.2d 1167, 1171 (7th Cir. 1983)).

Plaintiffs assert that an equal protection violation resulted from Defendants' intentional discrimination against the Minor-Plaintiffs based upon their handicaps,

17

denying them an equal treatment under the law.  (Doc. 91 ¶ 63.)   While Plaintiffs allege

such an intent, there is no evidence on the record which demonstrates that the conduct

of Wzorek, NEIU, or AHSD was directed specifically at the Minor-Plaintiffs because of

their disabilities.  In fact, the majority of the organizational conduct, such as maintaining a

"code of silence" against reporting abuse, seems to be universal in nature and not

targeted at the Minor-Plaintiffs.  (Doc. 158, pg. 57) (Medeiros had previously reported

abuse in another classroom, and nothing ever done).  Likewise, the evidence suggests

that Wzorek became overly aggressive with this particular set of students because she

did not know how to properly interact with them or because she was lashing out from

frustration, not because of their disabilities.  (Doc. 156, pg.  20) (first month was "chaos;"

became more aggressive second year).  The only evidence suggesting that there was

intentional discrimination against the Minor-Plaintiffs is the fact that only these students

were harmed; but the unfair treatment of individuals is not sufficient to make out an equal

protection claim.  *See Handley v. Phillips,* 715 F.Supp. at 673.  As the plaintiffs have

failed to provide sufficient evidence to create a question of material fact as to intent, the

Defendants' motions for summary judgment on this issue will be granted.


## II.      Counts II and XI - IDEA and Section 504 Claims

Plaintiffs' claims at Count II allege violations of the Individuals with Disabilities

Education Act, 20 U.S.C. Section 1400 *et seq.* ("IDEA") against all defendants, and at

Count XI allege violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

("Section 504"), against NEIU and AHSD.  Each of the Defendants' motions ask for

summary judgment against these claims.

18

A.     IDEA

The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that ... [a] free appropriate public education is available to all children with disabilities. . . ." 20 U.S.C. § 1412(a)(1)(A); *Shore Regional High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004). A free appropriate public education " 'consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction.' " *W.B. v. Matula*, 67 F.3d 484, 491 (3d Cir. 1995) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 188-89 (1982)). The "primary vehicle" for implementing a free appropriate public education is the Individualized Educational Program ("IEP"). "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988) (citing 30 C.F.R. § 300.347), *cert. denied*, 488 U.S. 1030 (1989); *Melissa S. v. School Dist. of Pittsburgh*, 183 Fed. Appx. 184, 186-87 (3d Cir. 2006).

To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). Flexibility to implement an IEP is maintained, yet the school district is

accountable for "confer[ring] some educational benefit upon the handicapped child," as required by the IDEA. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (citing *Rowley*, 458 U.S. at 188-89); *Melissa S.*, 183 Fed. Appx. at 187.

Plaintiffs, at Count II of their Amended Complaint, request compensatory money damages and punitive damages for violations of the IDEA and the failure to implement the prepared IEPs of the Minor-Plaintiffs. (Doc. 91, ¶ 69.) Defendants argue that damages beyond reimbursement for private educational placement and compensatory education are not available in an action under the IDEA. In *W.B. v. Matula*, the Third Circuit Court of Appeals stated: "we discern nothing in the text or history suggesting that relief under IDEA is limited in any way." *Matula*, 67 F.3d 484, 494 (3d. Cir 1995). The *Matula* court, however, was addressing relief available for an action raised under § 1983. *Id.* The Third Circuit Court of Appeals acknowledged that *Matula* did not address whether compensatory damages would be available under a non-1983 IDEA case. *C.M. v. Bd. of Educ.*, 128 Fed. App'x 876, 880 (3d Cir. 2005) (non-precedential). Subsequently, the Third Circuit Court of Appeals overturned *Matula* to the extent that it held a claim could even be made under § 1983 for an IDEA violation. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007). While that court has not dealt with the issue of compensatory damages directly under the IDEA, other Courts of Appeal have held that it does not allow for compensatory damages. *C.J.G. v. Scranton Sch. Dist.*, No. 07-1314, 2007 U.S. Dist. LEXIS 88719, at *20-*21 (M.D. Pa. Dec. 3, 2007) (citing cases).

Several courts in the Middle District of Pennsylvania have held that compensatory damages are not available under the IDEA, except as reimbursement for private

20

educational placement and compensatory education. *See C.J.G. v. Scranton Sch. Dist.*, No. 07-1314, 2007 U.S. Dist. LEXIS 88719 (M.D. Pa. Dec. 3, 2007). This Court recently reaffirmed that position, agreeing with another Middle District Court. *See Weidow v. Scranton Sch. Dist.*, No. 08-1978, 2009 U.S. Dist. LEXIS 73622, at *23 (M.D. Pa. Aug. 19, 2009) (citing *Derrick F. V. Red Lion Area Sch. Dist.,* 586 F. Supp. 2d 282, 297 (M.D. Pa. 2008) (citing cases)). Because there is nothing in the present case which would invite this Court to reconsider this issue, compensatory and punitive damages are not available under the IDEA. Defendants' motions for summary judgment will be granted with respect to Count II, and Plaintiffs' motion for summary judgment will be denied.

B.    Section 504[4]

There is a great intertwining of the IDEA and Section 504 of the Rehabilitation Act, in cases involving students with disabilities. The Third Circuit Court of Appeals has held that "there are few differences, if any, between IDEA's affirmative duty and [Section] 504's negative prohibition and have noted that the regulations implementing [Section] 504 require that school districts provide a free and appropriate education to each qualified handicapped person in [its] jurisdiction." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (quotations omitted). However, Section 504 is broader in scope than the IDEA, as the definition of an "individual with a disability" is in some respects broader than a "child with [a] disability" pursuant to the IDEA. *Molly L. ex*

---

[4]Defendant AHSD argues that it cannot be liable because it delegated its duties to NEIU by contract. However, both the school district and the intermediate unit can be jointly responsible for the free and appropriate education of the Minor-Plaintiffs. *See Colon v. Colonial Intermediate United 20*, 443 F.Supp. 2d 650, 668 (M.D. Pa. 2006).

*rel. B.L. v. Lower Merion Sch. Dist*, 194 F. Supp. 2d 422, 427 n.3 (E.D. Pa. 2002).

Additionally, while the same set of facts will often create causes of action under both, conduct which violates IDEA does not create a *per se* violation of Section 504. *Andrew M. V. Del. Count Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007).

Defendants claim that the Plaintiffs' Section 504 claim should be barred because the Plaintiffs have not exhausted their administrative remedies, as is required for most IDEA claims. Exhaustion is one area where IDEA claims differ from Section 504 claims. Claims pursuant to the Rehabilitation Act (Section 504) have a private right of action through Title VI of the Civil Rights Act, and do not require exhaustion. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007); *see also Jeremy H. by Hunter v. Mount Lebanon Sch. Dist.*, 95 F.3d 272 (3d Cir. 1996). Section 504 also differs from the IDEA because the available remedies include compensatory damages. *A.W.*, 486 F.3d at 804 (citing *Barnes v. Gorman*, 536 U.S. 181, 187 (2001)); *see supra* Part II.A. (IDEA does not permit compensatory damages).

To prevail on a claim pursuant to Section 504 of the Rehabilitation Act, a plaintiff must show that she was discriminated against because of her disability. 29 U.S.C. § 704(a). The plaintiff must demonstrate that: (1) she is disabled as defined by the Act; (2) she is otherwise qualified to participate in school activities; (3) the defendants receive federal financial assistance; and (4) the plaintiff was excluded from participation in, or was denied the benefits of, or subject to discrimination at school. 29 U.S.C. § 794. *See Ridgewood*, 172 F.3d at 253 (citing *W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1996)

(quotations omitted)). In the present case, there is no question that both NEIU and AHSD are the recipients of federal financial assistance. (Doc. 155, pg. 64). There is also no question that the Minor-Plaintiffs are disabled as defined in the act, and that they are otherwise qualified to participate in the relevant school activities of classroom education.

The critical question is whether they were denied benefits provided by the school to other students. The plaintiff must prove more than just a disability and denial of service; they must show that the disability was the cause of the discrimination or denial of benefits. *Andrew M. V. Del. County Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998). However, the plaintiff *need not* show that the discriminatory acts were intentional. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 253 (3d Cir. 1999)*; W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995); *D.G. v. Somerset Hills Sch. Dist.*, F. Supp. 2d 484, 496 (D.N.J. 2008). When the state fails to provide a free and appropriate education as promised to a disabled student, it violates both the IDEA and Section 504. *Andrew M.*, 490 F.3d at 350 ("It is the denial of an education that is guaranteed to all children that forms the basis of the [Section 504] claim."). The alleged abuse would not only demonstrate that a free and appropriate education was not being provided, but also that any effective instruction was undermined by the inappropriate conduct. (Doc. 162) (medical records on impact of treatment).

In the present case there are several issues of material fact remaining with respect to the Section 504 claim: (1) whether the alleged abuse actually occurred; (2) the extent of such abuse and the harm caused as it pertains to the issue of compensatory

23

damages; (3) whether there was inappropriate training and oversight with respect to NEIU and AHSD. (Doc. 157, pg. 146) (failure to train Wzorek in discipline for autistic children); (Doc. 176) (supervisor reports based only on Wzorek's affirmations); (Doc. 163, pg. 66) (failure to monitor placement of Rifton chairs where unnecessary); and (4) whether the creation of a culture of silence, where abuse could go without being reported, provided further evidence of a denial benefits. *See supra* Part I.A.2. (discussing culture of silence by NEIU officials). These genuine questions of material fact make summary judgment for either the Plaintiffs or Defendants inappropriate at this time.

Defendant AHSD argues that because it was not put on notice of the harm, that there is insufficient evidence against it, citing *Allen v. Susquehanna Twp. Sch. Dist.*, 233 Fed. Appx. 149, 154 (3d Cir. 2007) (unpublished). *See supra* Part I.A.2 and 3 (discussing notice to NEIU and AHSD, respectively). In *Allen*, the court was considering an appeal from a grant summary judgment in favor of the school district. *Allen*, 223 Fed. Appx. at 151. There the plaintiffs' child was killed crossing a highway after the student left school grounds between classes. *Id.* The parents alleged that the failure to provide an escort between classes for this special education student violated Section 504. *Id.* The Third Circuit Court of Appeals affirmed the grant of summary judgment, stating that the school district had no notice of the request for an escort or the need for one before the incident. *Id.* However, the situation in *Allen* is distinguishable from the present case. In *Allen*, the *need* for an escort was not known until after the accident occurred. *Id.* But in the present case, the need for a school environment free from abuse was known, or at the very least should have been known, to AHSD. Even without direct knowledge of the

allegations, AHSD was on notice that the students needed a safe environment for an appropriate education.

Defendants also argue that even if the students were denied a free and appropriate education, the damages should be limited to the same extent as a comparable award would be under the IDEA, citing *Neena S. V. Sch. Dist.*, No. 05-5404, 2008 U.S. Dist. LEXIS 102841 (E.D. Pa. Dec. 19, 2008). This would limit damages to compensatory education, eliminating the availability of a general compensatory award. Defendants, however, misconstrue the holding of *Neena* to say that further compensatory damages are unavailable for a claim of failure to provide a free and appropriate education under Section 504. *Id.* at *54. The court in *Neena* stated only that damages matching those available under the IDEA were appropriate given the facts of that case. *Id.* at *55. This Court is not persuaded that the damages under Section 504 must *always* match those available under the IDEA for a similar violation of a free and appropriate education. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d at 804 (citing *Barnes v. Gorman*, 536 U.S. 181, 187 (2001)) (allowing compensatory damages under Section 504). Additionally, the alleged failures in this case go well beyond those in *Neena*, and further compensatory damages could be warranted here.

Because there are genuine questions of material fact with respect to the denial of benefits under Section 504, granting summary judgment is inappropriate at this time. All parties' motions for summary judgment will be denied.

### III.     Counts III through VI - State Tort Claims Against Wzorek

Plaintiffs' claims at Counts III through VI allege various state-law tort claims against defendant Wzorek.  Defendant Wzorek's motion requests summary judgment against each of these claims.

As a threshold matter, the individual defendants may have immunity from some tort claims under the Political Subdivision Tort Claims Act ("PSTCA").  42 PA. CONS. STAT. ANN. § 8545.  This Court previously held that as organizational defendants NEIU and ASHD were immune from the state tort claims under the PSTCA.  (Doc. 27, pg. 32.) The PSTCA also provides immunity for municipal employees, including school district employees, to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment.  42 PA. CONS. STAT. ANN. § 8545; *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006).  However, immunity for an official does not exist when the "act constituted a crime, actual fraud, actual malice or wilful misconduct."  42 PA. CONS. STAT. ANN. § 8550.

The Third Circuit Court of Appeals has held that "willful misconduct" in this context has the same meaning as the term "intentional tort."  *Bright v. Westmoreland County*, 443 F.3d 276, 287 (3d Cir. 2006) (citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001)).  **"**A plaintiff must establish that the actor desired to bring about the result that followed, or at least it was substantially certain to follow, *i.e.*, specific intent." *Robbins v. Cumberland County Children and Youth Services*, 802 A.2d 1239, 1252-53 (Pa. Commw. Ct. 2002).  "[E]ven where a public employee acts with a degree of culpability equivalent to "recklessness," Pennsylvania law nevertheless affords him

immunity." *Bright*, 443 F.3d at 287 (quoting *Williams v. City of Philadelphia*, 569 A.2d 419, 421-22 (Pa. Commw. Ct. 1995)).  Proof of conduct which surpasses the immunity under the PTSCA requires a "demanding level of fault."  *Sanford v. Stiles*, 456 F.3d 298, 316 (3d Cir. 2006).  With respect to Defendant Wzorek, the record contains sufficient evidence, when viewed in the light most favorable to the Plaintiffs, to satisfy even this harsh standard of willful or criminal conduct.[5]  Therefore, Wzorek is not entitled to PSTCA immunity at this time.

A.      Assault & Battery

Generally, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citing *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).  Reviewing the record in a light favorable to the non-moving party, the Plaintiffs, there is clearly sufficient evidence to create a question of material fact on the issue of assault and battery.  Examples of conduct which satisfy the requirements for assault and battery include the use of bungee cords to restrain students (Doc. 156, pgs. 3-11), grabbing students by the back of the neck (Doc. 156, pg. 23), striking a student twice with the back of the hand (Doc. 158, pg. 22), stepping on students' feet for intimidation (Doc. 159, pg. 57), and striking a student in the head with a tissue box (Doc. 158, pg. 62).  Wzorek's argument that the conduct must be severe incorrectly applies the criminal, not civil, standard for battery.  *Renk*, 641 A.2d at 293 (citing *Cohen*, 70 A.2d at

---

[5] *See infra* Part IV for discussion of PSTCA immunity for the other defendants.

421). Defendant Wzorek's motion for summary judgment is denied.

      B.      Intentional Infliction of Emotional Distress

"To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and dangerous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. 1997). Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possibly bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997). Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'!" *Id.* A plaintiff must also establish that there is objective medical evidence in support of the claim. *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 994 (1987).

Reviewing the record in a light favorable to the non-moving party, the Plaintiffs, there is clearly evidence to create a genuine question of material fact on the issue of intentional infliction of emotional distress. The conduct on the record includes physically and emotionally abusive actions, taken by a teacher against often non-verbal autistic children. Evidence of physical blows (Doc. 158, pg. 22), restraints (*Id.* at 32), depravation of communications devices (Doc. 159, pg. 76), withholding of food (Doc. 158, pg. 104), and verbal abuse (*Id.* at 60) are all present in the record. Plaintiffs have also provided objective medical evidence that the minor-plaintiffs have suffered from post traumatic

stress and other disorders as a result.  (Doc. 162.)  The evidence on the record could reasonably be used to find intentional and outrageous behavior which caused emotional distress.  Defendant Wzorek's motion for summary judgment will be denied.

    C.      Breach of Fiduciary Duty

Under Pennsylvania law, "[t]he general test for determining the existence of . . . a [fiduciary] relationship is whether it is clear that the parties did not deal on equal terms." *Frowen v. Blank*, 425 A.2d 412, 416 (Pa. 1981).  Indeed, a fiduciary relationship "is not confined to any specific association of the parties."  *Leedom v. Palmer*, 117 A. 410, 411 (Pa. 1922).  Rather, a fiduciary relationship will be found to exist "when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible."  *Id.*; *see also In re Estate of Clark*, 359 A.2d 777, 781 (Pa. 1976) (a fiduciary relationship exists "as a matter of fact whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other"); *Drob v. Jaffe*, 41 A.2d 407, 408 (Pa. 1945) (a fiduciary relationship "exists wherever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest").  One in a fiduciary relationship with another is under a duty to act solely in the interest of that person.  *McCarrell v. Cumberland County Employee's Retirement Bd.*, 547 A.2d 1293, 1296 (Pa. Commw. Ct. 1988); *see also Leedom*, 117 A. at 411 (a fiduciary

29

relationship "is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself"). Failure to act in the other's interest results in a breach of the duty imposed by the fiduciary relationship. RESTATEMENT (SECOND) OF TORTS § 874 (1979).

The basic duties which arise from the teacher-student relationship are a duty to supervise, a duty to exercise good judgement, and a duty to instruct as to correct procedures, particularly, not but exclusively, when potentially hazardous conditions or instrumentalities are present, and these basic duties must co-exist with the whole purpose for the teacher-student relationship. *Bottorf v. Waltz*, 369 A.2d 332, 334 (Pa. Super. Ct. 1976) (citing a summary of the applicable law in another jurisdiction). There is no question that defendant Wzorek and the Minor-Plaintiffs were in a teacher-student relationship. Reviewing the record in a light favorable to the non-moving party, the Plaintiffs, there is sufficient evidence to create a question of material fact on the breach of that relationship by Defendant Wzorek. Defendant Wzorek's motion for summary judgment will be denied.

D.    Punitive Damages

Under Pennsylvania law, punitive damages may be awarded where an actor's conduct was "malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others." *Jahanshahi v. Centura Development Co.*, 816 A.2d 1179, 1188 (Pa. Super. Ct. 2003); *Johnson v. Hyundai Motor America*, 698 631, 639 (Pa. Super. Ct. 1997). In determining whether punitive damages are warranted in a particular case, "[t]he state of mind of the actor is vital." *Luddy*, 870 A.2d at 771. An appreciation of the risk is a necessary element of the mental state required for the imposition of punitive

30

damages.  *Id.* at 772.  As such, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed.  *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005).  However, notwithstanding this heightened standard, punitive damages may be awarded based on a cause of action sounding in negligence if the plaintiff is able to show that "the defendant's conduct not only was negligent but that the conduct was also outrageous."  *Luddy*, 870 A.2d at 772.

Plaintiffs asserted tort causes of action against Wzorek could potentially support claims for punitive damages.  Reviewing the record in a light favorable to the non-moving party, the Plaintiffs, there is sufficient evidence to create a question of material fact as to the intentional, reckless, malicious, or outrageous nature of the conduct of Wzorek.  Defendant Wzorek's motion for summary judgment will be denied.


IV.    **Counts VII through X - State Tort Claims Against Remaining Individuals**

Plaintiffs' claims at Counts VII through X allege various state-law tort claims against individual defendants Lamanna, Rosetti, Sluko, McNulty and Arnold.  Defendants' respective motions request summary judgment against each of these claims.

The individual defendants claim immunity under the Political Subdivision Tort Claims Act ("PSTCA").  42 PA. CONS. STAT. ANN. § 8545.  This Court previously held that as organizational defendants NEIU and ASHD were immune from the state tort claims under the PSTCA.  (Doc. 27, pg. 32.)  As previously discussed, the PSTCA also provides immunity for municipal employees, including school district employees, to the same extent as their employing agency so long as the act committed was within the scope of

the employee's employment.  42 PA. CONS. STAT. ANN. § 8545; *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006).  However, immunity for an official does not exist when the "act constituted a crime, actual fraud, actual malice or wilful misconduct."  42 PA. CONS. STAT. ANN. § 8550. Conduct which avoids the immunity by the PSTCA requires a demanding level of fault.  *Sanford v. Stiles*, 456 F.3d 298, 316 (3d Cir. 2006).

Here the plaintiffs do not allege that the supervisory defendants committed a crime, perpetrated fraud, or had malice against the Minor-Defendants.  Therefore, to avoid the immunity provided by the PSTCA, the Plaintiffs' evidence must demonstrate "willful misconduct."  When considering the actions of supervisors, evidence which demonstrates deliberate indifference fails to establish the type of willful misconduct necessary to pierce PSTCA immunity.  *Bright*, 443 F.3d 276, 287 (3d Cir. 2006) ("Assuming *arguendo* that a reasonable jury could infer [deliberate indifference to a known risk] from the facts alleged, the individual state-actor defendants would still not have engaged in "willful" misconduct and would still be entitled to immunity.").

While Plaintiffs correctly allege willful misconduct, they have failed to provide any evidence which demonstrates this high level of fault.  Their evidence must create a material question of fact that these defendants intended abuse to occur in Wzorek's classroom, or that they must have been substantially certain it would occur.  *See Evans v. Philadelphia Transportation Company*, 212 A.2d 440, 443 (1965).  Even examining the record in the light most favorable to the Plaintiffs, the conduct of AHSD defendants Arnold, McNulty, and Sluko was at best negligent.  *See supra* Part I.A.3. (lack of notice to AHSD).  As a result, they fail to demonstrate questions of material fact which could

survive the immunity provided by the PSTCA.  Likewise, while the conduct of the NEIU

defendants potentially rises to the level of deliberate indifference, even this type of

conduct is immunized under the PSTCA.  *Bright*, 443 F.3d at 287 (allegation of deliberate

indifference not enough to avoid PSTCA immunity); *see supra* Part I.A.2. (notice and

deliberate indifference of NEIU).  As a result, the Defendants' motions for summary

judgment with respect to Count VII through X will be granted.


## CONCLUSION

The court will grant in part and deny in part the motions for summary judgment of

the Defendants as discussed above.  The court will deny the motion for summary

judgment by the Plaintiffs.

An appropriate Order follows.


 September 16, 2009                                  /s/ A. Richard Caputo
Date                                                     A. Richard Caputo
                                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

VICKY M. and DARIN M., as Parents and
Natural Guardians of a Minor, A.J.M., et
al.,

       Plaintiffs,

          v.

NORTHEASTERN EDUCATIONAL
INTERMEDIATE UNIT, et al.,

       Defendants.

NO. 3:06-CV-01898


(JUDGE CAPUTO)

**ORDER**

       **NOW**, this  16th  day of September, 2009, **IT IS HEREBY ORDERED** that:

(1)    The Motion for Summary Judgment of Defendant Wzorek is granted in part

and denied in part as follows:

Count I, as to Substantive Due Process - **DENIED**;

        as to Equal Protection - **GRANTED**.

Count II - **GRANTED**.

Counts III - VI - **DENIED**.

(2)    The Motion for Summary Judgment of Plaintiffs is **DENIED**.

(3)    The Motion for Summary Judgment of Defendants NEIU, Rosetti, and

Lamanna is granted in part and denied in part as follows:

Count I, as to Substantive Due Process - **DENIED**;

        as to Equal Protection - **GRANTED**.

Count II, Counts VII - X - **GRANTED**.

Count XI - **DENIED**.

(4) The Motion for Summary Judgment of Defendants Abington Heights School

District, Arnold, McNulty, and Sluko is granted in part and denied in part as

follows:

Count I, Count II, Counts VII - X - **GRANTED**;

Count XI - **DENIED**.

 /s/ A. Richard Caputo\
A. Richard Caputo\
United States District Judge