# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKY M. And DARIN M., as Parents and Natural Guardians of Minor, A.J.M., et al., | CIVIL ACTION NO. 3:06-cv-1898 |
| Plaintiffs, | |
| v. | |
| NORTHEASTERN EDUCATIONAL INTERMEDIATE UNIT, et al., | (JUDGE CAPUTO) |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court are two motions to reconsider this Court's September 16, 2009 Memorandum and Order (Doc. 199) denying summary judgment: (1) the motion of Defendant Abington Heights School District which argues that this Court made several clear errors of fact and law, or in the alternative, requesting that this Court certify its prior opinion for interlocutory appeal under § 1292(b); and (2) the motion of Defendants Northeastern Educational Intermediate Unit, Clarence Lamanna, and Fred Rosetti which adopts the arguments of Abington Heights and provides additional arguments that this Court committed clear error. Because the issues raised by these motions have either been addressed in the prior order, or because the record before this Court demonstrates a genuine issue of material fact remains, the Defendants' motions will be denied.

1

**BACKGROUND**

**I.     Factual Background**

Northeastern Educational Intermediate Unit ("NEIU") is an educational resource agency that acts as a liaison between the Pennsylvania Department of Education and a number of school districts and also provides education services. (Doc. 130, Ex. 2, ¶ 1). Dr. Fred Rosetti ("Rosetti") was the Executive Director of NEIU during the relevant times to this litigation.  (*Id.* ¶ 7.)  Dr. Clarence Lamanna ("Lamanna") was the Director of Special Education at NEIU at all relevant times. (*Id.* ¶ 9.) Collectively, NEIU, Rosetti, and Lamanna are the NEIU Defendants.  Susan Wzorek ("Wzorek") was a teacher employed by NEIU during all relevant times. (*Id.* ¶ 1.) Jill Celli ("Celli") and Robin Medeiros ("Medeiros") were teacher's aides employed by NEIU during all relevant times.   (*Id.* ¶ 16.)  The Abington Heights School District ("AHSD") is a school district duly organized and existing under the laws of the Commonwealth of Pennsylvania. (Doc. 134, ¶ 1.)

During the 2001-2002 and 2002-2003 school years Wzorek was a teacher in an autistic support class at Clarks Summit Elementary School. (Doc. 125, ¶ 1.) AHSD contracted with NEIU to provide services during the same time frame, including the placement of students in Wzorek's classroom. (*Id.* ¶ 20.) Plaintiffs are the parents of students allegedly abused in Wzorek's classroom during the 2001-2002 and 2002-2003 school years. (Doc. 91.)

There is at least some evidence on the record to support the following facts:

Wzorek was certified to teach special education for students K-12. (Doc. 155, pg. 101.)  This qualified her to teach all special education students except those with visual,

hearing, or speech impediment disabilities. (*Id.* at 151.) Wzorek asserts that while some training with regard to disciplining autistic children was offered, she failed to complete any courses. (Doc. 157, pg. 146.) While Wzorek did show up for one class, the instructor failed to arrive and Wzorek never returned. (*Id.*) She also took a course on classroom setup (*Id.* at 147) and a course on language programs for autistic students. (*Id.* at 148.) Wzorek failed to complete the entire twelve (12) hour safe crisis management program offered. (Doc. 155, pg. 80.)

During the school years NEIU supervisors Nasser (Doc. 157, pg. 137) and Weir (Doc. 176) would visit the classroom. Teacher evaluations were performed for Wzorek during both school years. (Doc. 155, pgs. 10-17.) The evaluations took into account feedback from only Wzorek and Lamanna, with Lamanna having never been in the classroom. (Doc. 158, pg. 95.); (Doc. 176). Visits to the classroom by supervisors were described to range between "quite [frequent]" (Doc. 157, pg. 14-23), to maybe once a month (Doc. 159, pg. 59.) The door to the public school, Clarks Summit Elementary, was described as open at times, closed at others. (Doc. 158, pg. 99.)

Wzorek's classrom was described as "chaos" through the first month, where there were children with severe behavioral problems, ages five (5) to eleven (11), all in one classroom. (Doc. 156, pg. 20.) Wzorek was also described as "really aggressive" during the second year (2002-2003), particularly after Christmastime. (*Id.* at 21-25.) The allegations of abuse include: the use of bungee cords for restraint and discipline (*Id.* at 16); the use of duct tape on students as restraints (Doc. 159, pg. 48); leaving students restrained in a chair and on the floor for several minutes after the students had overturned the chair (Doc. 156, pg. 21); using Rifton chairs for punishment or restraint (Doc. 159, pg. 51); grabbing students

3

by the ear or pinching noses causing bruising (Doc. 156, pg. 23); grabbing students by the back of the neck (*Id.* at 26); dragging students by the hair and arms (*Id.* at 119); backhanding a student causing a bloody lip (*Id.* at 27); screaming into the faces of students (Doc. 158, pg. 60, 63); squeezing students' hands as a punishment (Doc. 156, pg. 54); crushing a student's fingers (Doc. 159, pg. 105); stepping on students' insteps for intimidation (Doc. 159, pg. 91); squeezing students' faces (Doc. 156, pg. 57); striking a student in the head with a tissue box (Doc. 158, pg. 62); depriving a non-verbal student of a picture communication system, preventing him from being able to communicate needs such as the bathroom (Doc. 159, pg. 76); forcing a student to ride home for over an hour on the bus soaked in urine (Doc. 172); and withholding food from a student as a punishment (Doc.159, pg. 104.)

All parties agree the trigger for the removal of Wzorek from the classroom came after Celli and Medeiros reported the alleged abuse to Lamanna on July 28, 2003. (Doc. 130, Ex. 2, ¶ 21.) There is some evidence that there were several prior warnings provided to NEIU, Rosetti, and Lamanna about abuse in Wzorek's classroom. (Doc. 171) (Thomas R. attempted to contact NEIU "long before" the aides complained); (Doc. 157, pg. 99) (injury after student backhanded reported); (Doc. 173) (Rosetti contacted by Eva L. during 2001-2002 school year after observing a student being forced into a Rifton chair); (Doc. 172) (contacted after a student was forced to ride home for over an hour in urine soaked clothing); (Doc. 174) (Rosetti contacted by Gloria G. after being told her child could not take a medication during the week).

NEIU had policies detailing requirements for reporting student abuse, but none specifically for the abuse of disabled students. (Doc. 155, pg. 98.) Instead, they expected anything unusual to be reported by the NEIU employees or the non-NEIU personnel in the

4

classrooms. (*Id*.) Celli and Medeiros stated that they waited so long to report the conduct because they were told that no one would believe them over a teacher. (Doc. 159, pg. 108.) Allegedly, there was a "code of silence" which discouraged reports against teachers. (Doc. 177, ex. Y, attachment 2.) Medeiros had previously reported another teacher, but "nothing was ever done." (Doc. 158, pg. 57.) Wzorek also told Celli and Medeiros that no one would believe them. (Doc. 159, pgs. 73-74.) NEIU teachers allegedly congratulated a teacher "on keeping her mouth shut" when giving a deposition about these allegations. (Doc. 158, pg. 73.) Detective Kolcharno, an officer investigating Wzorek for criminal charges stemming from the abuse commented:

> [W]e've done internal affairs investigations for police departments, and people talk about the blue wall, that cops don't testify against each other. I have never - never done an investigation where people covered for each other and people didn't want to get involved like this case. It was just unbelievable. I thought cops were bad, before I investigated a teacher.

(Doc. 170, pg. 44.) Before meeting with Celli and Medeiros to discuss the allegations, Rosetti allegedly stated " don't worry about it, Sue (Wzorek), they're coming in here today to shoot their loads and then it's going to be over so don't worry about it." (Doc. 177, Ex. 1.) NEIU conducted an internal investigation, but may have missed interviewing several important witnesses. (Doc. 163, pgs. 130-31.) NEIU never reported the abuse allegations to the authorities. (Doc. 163, pg. 27.)

The officials of AHSD were never informed by Celli or Medeiros of the allegations, and only heard about them after the July 28, 2003 report to Lamanna. (Doc. 165, pg. 22.) After reporting the allegations, AHSD teachers refused to allow Celli or Medeiros into their classrooms. (Doc. 164, pg. 122.) Because the behavior of the AHSD teachers towards the

5

aides became disruptive, AHSD requested that the special education class be moved entirely out of Clarks Summit Elementary. (*Id.* at 130.)

**II.    Procedural Background**

On September 26, 2006, Defendants filed a notice of removal from the Court of Common Pleas of Lackawanna County, Pennsylvania to this Court, based on Plaintiffs' inclusion of federal causes of action in their Complaint. (Doc. 1.) For the purposes of discovery and pre-trial matters, the action of all parents and minor-plaintiffs were consolidated on June 6, 2008. (Doc. 100.) All parties filed their respective motions for summary judgment or partial summary judgment on April 15, 2009. (Docs. 123, 127, 130, 133.) This Court issued a Memorandum and Order on September 16, 2009 denying summary judgment to all parties. (Doc. 199.) The AHSD and the NEIU defendants each filed motions to reconsider. (Doc. 201 (AHSD); Doc. 202 (NEIU.)) Both motions have been fully briefed and are now ripe for disposition.

**LEGAL STANDARD**

**I. Motion for Reconsideration**

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within ten days of entry. FED. R. CIV. P. 59(e). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an

intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, No. 05-cv-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

### II. Interlocutory Appeal

Pursuant to 28 U.S.C. § 1292(b), a district judge may certify an order for immediate appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The decision to certify an order for immediate appeal lies within the sound discretion of the trial court. *Albert v. Nationwide Mut. Fire Ins. Co.*, No. 03-cv-99-1953, 2001 U.S. Dist. LEXIS 16434, at * 12 (M.D. Pa. May 22, 2001) (Caputo, J.) (citing *Orson v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994)). The burden is on the movant to demonstrate that a § 1292(b) appeal is warranted. *Id.* (citing *Orson*, 867 F. Supp. at 320). The district court should certify an

7

order for immediate appeal only if all three requirements set forth in § 1292(b) are met. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974), *cert. denied*, 419 U.S. 885 (1974); *Orson*, 867 F. Supp. at 321 (citing *Piazza v. Major League Baseball*, 836 F. Supp. 269, 271 (E.D. Pa. 1993)). Furthermore, a court should exercise its discretion mindful of the strong policy against piecemeal appeals. *Link v. Mercedes-Benz of N. Am.*, 550 F.2d 860, 863 (3d Cir. 1977), *cert. denied*, 431 U.S. 933 (1977).

## DISCUSSION

There has been no intervening change to controlling law or discovery of new evidence that would warrant reconsideration of this Court's prior opinion. The Defendants instead rely upon the third justification for reconsideration, and argue that I committed six clear errors of law or fact. For the reasons discussed below, I will deny the Defendants' motions.

**I.     Clear Errors of Law and Fact**

A. Insufficient Evidence of Section 504 Claim

Defendants AHSD and NEIU argue that there is no evidence creating a genuine issue of material fact regarding the Plaintiffs claims under Section 504. 29 U.S.C. § 794. Defendants correctly articulate that the Plaintiffs must prove more than just a disability and a denial of service. *Andrew M. v. Del. County Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007). As stated in this Court's prior memorandum, to prevail on a claim pursuant to Section 504 the Plaintiffs must demonstrate that the disability of the Minor-Plaintiffs was the cause of the discrimination or denial of benefits. (Doc. 199 at 23.)

Defendants argue that because this Court found that there was no discrimination in the equal protection context, there must also be no cause of action under Section 504. (Doc. 203 at 6 (citing Doc. 199 at 17-18.)) While Defendants are correct that I found no evidence

that AHSD intentionally or deliberately discriminated against the Minor-Plaintiffs, there is no requirement that Section 504 claims be based on intentional conduct. (Doc. 199 at 23.)[1] Furthermore, there is no requirement that discrimination must occur to create liability under Section 504. As stated in this Court's opinion, the Plaintiffs only need to demonstrate that the disability of was the cause of the discrimination *or denial of benefits*. (Doc. 199 at 23 (citing *Andrew*, 490 F.3d at 350.)) This Court's analysis focused not on discrimination, but on the denial of the benefits of a free and appropriate education. (Doc. 199 at 23.)

There is evidence that the denial of benefits – the failure to provide a free and appropriate education – occurred or was allowed to continue because of the students particular needs and limited communications skills, i.e. because of their disabilities. I specifically considered whether the evidence presented demonstrated that the Minor-Plaintiff's disabilities were the cause of the denial of benefits, and found that material issues of fact remained as to this issue. (Doc. 199 at 23-24.) Defendants provide no overlooked controlling precedent or facts, and so I need not reconsider their arguments here. The Defendants' motions will be denied.

B. Money Damages Not Warranted

The Defendants next argue that money damages are not warranted in this case, since the alleged conduct under Section 504 is the same conduct for which money damages are not allowed under the IDEA. The Defendants previously made this exact argument citing to *Neena S. v. Sch. Dist.*, No. 05-cv-5404, 2008 U.S. Dist. LEXIS 102841 (E.D. Pa. Dec. 19,

---

[1] Note that I did find sufficient evidence to support a claim of deliberate indifference against the NEIU defendants, who join AHSD on this argument for reconsideration. (Doc. 199 at 16.)

2008). Their argument was considered and rejected by this Court (Doc. 199 at 25), and the Defendants provide no overlooked controlling precedent or facts which would alter this conclusion. Defendants' motions will be denied.

C. Section 504 Requires Intent

The Defendants also argue that for liability for money damages to attach under Section 504, there must be a showing of intentional conduct beyond the failure to provide a free and appropriate education. This Court specifically considered this issue in its prior order. (Doc. 199 at 23.) I found that the plaintiffs need not show that the actions were intentional under Section 504. (*Id.*) The Defendants cite no overlooked controlling precedent, and I need not re-examine their earlier arguments on this issue. Defendants' motions will be denied.

D. AHSD Only Liable for "Residents"

Defendant AHSD argues that it can only be liable for those students who were residents of its geographic district during the time in question. They assert that Plaintiffs D.B. and B.M. were the only residents of the AHSD. To the extent that this Court did not clarify in its previous order the scope of AHSD's potential liability, I will do so now.

Section 504 of the Rehabilitation Act, at 29 U.S.C. § 794 states:

> No otherwise qualified individual with a disability in the United States, as defined in section [29 U.S.C. § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance

29 U.S.C. § 794(a) (2009). The federal regulations implementing Section 504 state that a school district shall "undertake to identify and locate every qualified handicapped person

10

residing in the recipient's jurisdiction." 34 C.F.R. § 104.32(a). While this creates an affirmative duty under Section 504 to those students residing within a school district's geographic boundaries, it does not explicitly exclude other students from being protected. Indeed if a school district voluntarily included students from other districts, it would make no logical sense that Section 504 would not shield those students from discrimination.

Section 504 is implemented under Pennsylvania law by 22 Pa. Admin. Code § 15.1, *et seq. Lower Merion Sch. Dist. V. Doe*, 931 A.2d 640, 644 (Pa. 2007). The Code specifically defines when a school district has the obligation to satisfy the requirements of Section 504, stating:

> A school district shall provide each protected handicapped student *enrolled in the district*, without cost to the student or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the school program and extracurricular activities without discrimination and to the maximum extent appropriate to the student's abilities.

22 Pa. Admin. Code. § 15.3 (emphasis added); *Lower Merion*, 931 A.2d at 643-44. Therefore, a school district has a duty to provide benefits under Section 504 to all those enrolled. *Lower Merion*, 931 A.2d at 644. A student need not, however, be attending classes in the district's public schools. *Id.* This is consistent with this Court's prior statements that AHSD and NEIU were jointly responsible with providing the Minor-Plaintiffs with a free and appropriate education. (Doc. 199 at 21 n. 4 (citing *Colon v. Colonial Intermediate Unit 20*, 443 F.Supp. 2d 650, 668 (M.D. Pa. 2006.)) I find that AHSD had a duty under Section 504 to those students residing within its geographic territory, as well as those enrolled in the Abington Heights School District, regardless of whether those students

11

attended AHSD classes. Given the record before this Court, I cannot determine that any of the Minor-Plaintiffs fail to meet one of these criteria. While AHSD's liability under Section 504 may be limited, I cannot make such a determination at this time.

Additionally, both Plaintiffs and AHSD argue that the comments by AHSD's current and former school officials, as to their understanding of their duty to the Minor-Plaintiffs, can establish a duty under Section 504. These statements cannot establish a legal duty, and do not alter this Court's above conclusion. For the aforementioned reasons, AHSD's motion will be denied.

E.  Defendants Lamanna and Rosetti Protected by Qualified Immunity

Defendants Lamanna and Rosetti argue that they are protected by qualified immunity from the § 1983 claims. This exact argument was considered and rejected in this Court's opinion (Doc. 199 at 12-16), and the Defendants provide no reason for reconsideration beyond a re-argument of the same points. NEIU also argues that a number of facts relied upon by this Court were incorrect. Their arguments, however, go to the weight and credibility of the evidence, not its existence.[2] Regardless, they are re-arguing the determination made by this Court that there were genuine issues of material fact. Because there is no clear error of law or fact, I need not re-examine these arguments here. NEIU's motion will be denied.

---

[2] To the extent the Defendants argue that this Court relied on facts not in the record by pointing out that one or more citations to the record by this Court were incorrect, this does not establish manifest injustice worthy of reconsideration. Instead, they instead establish only a harmless error in citation by this Court. Indeed the Defendants seem to know the evidence in the record the Court is speaking of, such as the statements by Detective Kolcharno. (Doc. 204 at 7 ¶ 1 (identifying this Court's typographical error of stating "exhibit 2" instead of "attachment 2," yet discussing the fact.))

12

F. Considering Plaintiffs Cases Combined

The final argument raised is that this Court erred in considering the claims against the NEIU defendants in terms of all plaintiffs, rather than on a case by case basis. As I stated in my opinion, however, the claims under § 1983 stem from NEIU's deliberate indifference to the repeated warnings of abuse by one of their instructors. (Doc. 199 at 13-16.) When determining liability under substantive due process, it was appropriate to consider the overall pattern of evidence, and to determine if that overall indifference was "shocking to the conscience." NEIU's motion will be denied.

## II. Interlocutory Appeal

AHSD also requests that this Court certify its previous opinion for immediate, interlocutory appeal under 28 U.S.C. § 1292(b). AHSD argues that there are substantial grounds for a difference of opinion as to the elements of a claim under Section 504. I disagree. AHSD cites *Harris v. Kellogg, et al*, No. 08-cv-563, 2009 U.S. Dist. Lexis 36253, at *6 (W.D. Pa. Apr. 30, 2009), and states that substantial grounds for a difference of opinion may be demonstrated where there are conflicting opinions. In *Harris*, however, the court was addressing differing opinions between multiple *courts*, not a disagreement between the district court's interpretation and that of a litigant. *Id.* I find that the Third Circuit Court of Appeals and other district courts who have applied Section 504 have clearly established the necessary elements of a claim. AHSD's disagreement with this court's application of that precedent does not present substantial grounds for a difference of opinion. Because all three requirements under § 1292(b) must be met, I find that immediate, interlocutory appeal is not necessary. AHSD's request for certification will be denied.

13

**CONCLUSION**

Because there was no clear error of law or fact, and because genuine issues of material fact remain, I will deny the Defendants' motions.


 November 20, 2009                    /s/ A. Richard Caputo
Date                                  A. Richard Caputo
                                      United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

VICKY M. and DARIN M., as Parents and Natural Guardians of a Minor, A.J.M., et al,

    Plaintiffs,

        v.

NORTHEASTERN EDUCATIONAL INTERMEDIATE UNIT, et al.,

    Defendants

CIVIL ACTION NO. 3:06-cv-1898

(JUDGE CAPUTO)

## **ORDER**

**NOW**, this  20th  day of November, 2009 **IT IS HEREBY ORDERED** that:

1. Defendant Abington Heights School District's Motion for Reconsideration (Doc. 201) is **DENIED**.

2. Defendants Northeastern Education Intermediate Unit, Clarence Lamanna, and Fred Rosetti's Motion for Reconsideration (Doc. 202) is **DENIED**.

                                                /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge